Good morning, Your Honors. It's been about 30 years since I appeared in front of Your Honors, and it's a pleasure to be back. Last time I was here, it was only a year out of my clerkship, so I have very fond memories of those days. May it please the Court, I would take 10 minutes for my opening and save five for rebuttal unless questioning goes into that. So thank you for hearing from us this morning. This dispute in the claim was about lost settlement. It was not about coverage. What happens in the motion for summary judgment is, for the first time in its summary judgment motion, Travelers asserts that this was never a covered claim to begin with. And the Court, I think, confused coverage and lost settlement. And the Court, this is at the... I know this argument was in your briefs, and I guess I have a couple questions about it. So one is, I think coverage, we can interpret the policy, right? So if it's a question of law, I'm not sure why it matters to raise it in summary judgment for the first time. If it's a question of fact, I understand you have an argument, well, we didn't know you were raising this fact, so we needed our expert to opine. But I don't see anywhere where you ask to reopen discovery or strike something their expert said or any kind of actual motion to deal with this problem that you're saying sprung up. You're 100 percent correct, Your Honor, and I will not be arguing any procedural bar argument today. So the reason I started with this, I think, fallacy in the Court's opinion is because the Court necessarily, I think, invented a new rule of coverage, invented a burden of coverage, because it ultimately misunderstood that Travelers covered this claim from day one to today and never uncovered it. And in order to avoid, I think, powerful evidence, which would have supported a jury trial, the Court had to invent a new rule. Well, the Court wasn't inventing a rule. The Court was applying Rule 56 and the standards that govern summary judgment, wasn't it? I mean, I think you didn't claim that they were barred from arguing at summary judgment that there was no coverage obligation, and then the Court was obligated to apply the standards of Rule 56 in determining whether they were entitled to judgment on that issue. Why? How did — I think it seems to me the focus should be how the Court erred, in your view, in applying Rule 56. That was the heart of the issue, right? It sort of doesn't — the Court, I don't know, it said it was modifying California law, applying a different rule of California law. It said, I'm applying Rule 56, and you hadn't produced admissible evidence that would support — create a genuine dispute of material fact. Where did the Court err in that respect? So with respect, Your Honor, I think you're wrong. I think the Court did invent a rule. And I think the reason the Court had to invent a rule is because if it were to fairly apply the normal rules and burdens that apply to a summary judgment motion, this wouldn't have been close. So the — and the new rule is stated right in the order. The rule says, causation, meaning coverage, in this case where there are no witnesses, is beyond the scope of lay witness testimony. He said, in order to prevail on summary judgment, you must have a retained expert who will opine on causation. And there are circumstances recognized under Federal and California law where particular issues do require expert testimony, correct? But not to causation under an insurance policy. And the essential thing here is that having been invited to create this rule, it ignored overwhelming evidence that I think a jury could rely on to find that this was a covered loss. And really, Your Honor, I think you need not go beyond the decision in Kim v. Mapri to see why the Court got this wrong. I mean, the case is on all fours. It is — But it's a district court case that we're not bound by. So I think we need to start from scratch on why it isn't a topic that needs expert testimony, that something about a roof — I mean, I don't know how roofs work. And I think we have to talk about how normal lay people understand how roofs work. So I understand that you argue that the people who were — the lay witnesses who were opining about roofs actually knew a lot about roofs, but then that's because maybe they're experts and they needed to be qualified as experts. I don't quite understand your argument about why it's such a lay understanding of how wind hurts roofs that everyone should understand this. So the reason we cite Kim — and, of course, Kim is not controlling here, but I do think it's a useful opinion to understand the way another district court saw these causation issues. For sure, issues of causation under insurance policies can be complex. Juries decide them, ultimately. This is a jury issue. And they decide them not necessarily entirely relying on paid expert testimony, litigation expert testimony, which is what we have here on Traveler's Night. We have a paid litigation expert who shows up years later and says it wasn't covered. So on the other side of the ledger, why couldn't a jury, for instance, find that Traveler's investigated this loss, that Traveler's inspected it close to the time, which is what the Kim v. Mapfre Court says, and Traveler's found it was a covered loss and never found otherwise? Why — So, I mean, and this gets to — they paid — they were willing to pay $4,000 or whatever. They just weren't willing to pay hundreds of thousands of dollars. I mean, sometimes it might be easier to just pay a little bit and see if it goes away. But you're trying to say because they did that, now they're bound to pay the much larger amount or to stick with that forever.  What I'm — and that would be an estoppel argument. What I'm saying is that the circumstances all told, and given the extraordinarily high burden or hurdle they have to clear in certainly judgment, the circumstances all told are not close here. We have an obviously sudden loss. This building is not leaking water. There's no evidence this roof is leaking water over many years. But you have, as far as I can tell, your only statement that someone had seen the roof and there was no hole in it was a full year before. There's a roofer report. Correct. I mean, they don't have contrary evidence. But yeah, there's a roofer report that says the roof is in good shape. There's no evidence — Well, it says it's in fair shape, and it was — I mean — Three to five years. So, okay. They have no evidence of infiltration of water until these storms. They have a sudden and widespread infiltration over the entire amount of the building. The tenant flees because the house — the building is uninhabitable. And to be fair, Your Honor, Traveler's number went up quite a bit in the claim. So it started with five, but in the claim it got to pretty close to 25, and in the litigation they're at 65. So this is not a small loss. So we have a — what appears a jury could find, I think, given the inferences and burdens that are associated with summary judgment, I think a jury could find this was a sudden loss, not some sort of long-term infiltration. But so — I mean, I don't remember where this is. Is this — it's in California, right? I mean, it doesn't rain all the time, right? So you could have nine months of a hole in a roof and no rain, and then it has a big storm and the rain comes in. But that doesn't necessarily mean the hole wasn't there. So Your Honor is engaging in exactly the sort of analysis that a jury should be permitted to engage in. And when you hear from Traveler's counsel, he is going to say all the same things. He's going to make a very effective jury argument, because that's what they do in their brief. The problem is we don't get to be in front of a jury. But I guess the question is what — it's abuse of discretion, right, for the district judge to decide a certain type of testimony needs to be expert versus lay? Yes. But, of course, your review is de novo. So — Well, sort of. But this is an evidentiary issue, right, that the district court said you don't have the right type of testimony? I don't think so. I think the rule that he — there is no California case, no Ninth Circuit case or California case, which says in the event of a wind loss, you require expert — paid, retained expert testimony. No, but there are California cases that say when causation or other issues are outside the purview of a lay witness and it requires expert testimony, a court can, you know, require expert testimony versus merely lay testimony to, you know, bear the burden of proof. Never in the insurance coverage context. In the personal injury context, yes. But so let me actually — Can I ask, I mean, a variation on this? It may be the case that, you know, that there could be a circumstance where one, you know, the insurance company comes in with its causation expert and offers expert testimony and the insured responds with lay testimony to say, you know, one person went up on the roof the day before and it was in — didn't see any holes in the roof. Another person went up on the roof the next — the day afterwards and spotted the holes and they corresponded to the locations of the infiltration. I mean, so you — I could see a circumstance like that in which a lay testimony would be sufficient perhaps to create an issue of fact that is for the jury. Isn't it the case here, though, that we don't really have that? What we have is kind of ultimate conclusions after the fact by your witnesses. It's not — they didn't say, you know, I saw it on the day before and then I saw it this day and here's the difference that I spotted. What they said is, we conclude that it was the windstorm that caused the immediate damage leading to this — they were offering the end point of the analysis, which is the causation conclusion, as opposed to offering the intermediate layperson facts that might support. Isn't that the — isn't that the problem here that you faced, is that you're — you are allowing people to testify to the direct issue of causation as — which may be beyond a lay witness's ability to testify and you weren't instead saying, here are the pieces of — the credible, you know, pieces of evidence from which — of lay evidence from which causation could be found? Let me take through it, Your Honor, because I do think this is not close. We have all the evidence about what this building looked like and what happened in the year Well, there's evidence of — sorry — there's evidence of harm to the roof from the Google street map images that the insurer's expert retrieved from prior to this windstorm, isn't there? I mean, what we have is we have a year after report by the expert, which is paid for in the litigation. Which always happens. It always happens. And again, we are not arguing that they can't put on a very compelling case at trial. What we're saying is, are you going to impose a burden on an insured — every insured now? So critically, as relates to this rule that I think the court invented, it's contrary to California law. The California law regulation is that it is obligation of the insurance company to do a thorough, fair, and objective investigation. Every insured who has any kind of loss like this is now — Again, I think you're confusing — the district court was applying Rule 56, which is a question of federal law. And it was applying how it understood the rules and the burdens that apply under Rule 56. It's — we're not — we're not really dealing with California law. We're dealing with Rule 56. And it may be the court erred in that respect, but we're talking about Rule 56, aren't we? I agree, Your Honor. The question is whether the court really took into consideration the Rule 56 evidence. And I believe, and I think the Kim case is — on all fours, I realize it's not controlling, but it should be a source of comparison. How is it possible that in that case, an adjuster goes out and looks at the loss, a handyman looks at the loss, the plaintiff looks at the loss, and then they bring in an expert — actually, that point, in that case, it was in the claim — and the expert says it's not covered. And the court says, well, it's — it could go either way. And we're talking about a same sort of technical issue there. So here, you have a building that has no evidence of infiltration. You have a sudden loss. You have Traveler's own investigation, which is supposed to be thorough and fair, and which, by the way, in 2022, its manager testifies it was a covered loss. He says, yes, it was covered. The only dispute in the loss was scope and law settlement. Had nothing to do with coverage. They never denied the claim. So they — But this is your estoppel argument again, though, that you're not really — I mean, you're not really making an estoppel argument. It isn't, Your Honor. It isn't. What I'm arguing is, why can't we trust a jury to consider the facts, the circumstances of the building, the fact that Traveler's investigated it? I'm not asking you to hold for coverage as a matter of law. What I'm saying is, why can't a jury consider what they did, what they found, and also the testimony of the roofer, who says, yeah, this was a win-loss, the testimony of the owner of the building, who's a contractor? Why do we throw all that out in favor of their paid litigation? Let me — just beyond the timeframe, which I understand you have concerns about, 30 days, which is a reasonable amount of time, to be frank. It's often more time than you have in responding to a motion for summary judgment. But why is it the case that your expert could not have provided an explanation in the rebuttal that you provided? I mean, instead of a single sentence opining on causation, actually provided what the court said was required, which was an explanation of the methodology by which he drew the expert conclusion that the causation here was the windstorm and not what their expert was saying. There is a very simple answer to that and to this whole conundrum that we faced at the end of this case, which is that nobody thought about this. Nobody from the beginning of this case. Because Traveler's — But no, but you — they put in an expert report, they moved on this ground, and you did respond to it, but you responded with an expert report that included effectively a single sentence that was entirely summary as to the question of causation, which the court concluded didn't satisfy the rules, Rule 702, in that it did not provide the methodology and basis for the conclusions. And that — you know, that why wasn't it possible to provide a more — within 30 days, which is a fair amount of time, it's tight, but could be done, why was it not possible as soon as you got that report from their expert to have your expert, who you offered as an expert on issues of causation at the outset, to actually go through and explain why he drew the conclusions he was drawing and where their expert was drawing erroneous conclusions, which is typically what happens with a rebuttal expert report in the context of a motion for summary judgment? Your Honor, I have no excuse, but I have a reason. And the reason is that everybody in this case, travelers, the adjusters, the witnesses, all believed this was a covered loss until their motion for summary judgment. And so, to be fair, the answer is I have no — I have absolutely no excuse. It should have been done. And I believe we cleared the 702 bar, but if we did, we did it by hair. And I believe you cannot, in the context of summary judgment, given the burdens, given the inferences, you cannot ignore all of this other evidence. And I am not saying it's covered as a matter of law by way of estoppel. Let me be very clear. What I'm saying is you cannot ignore the condition of the building, the testimony, the coverage decision by travelers. You have to trust a jury to make that decision. And that's what we're asking. Can I ask, the lay testimony, which the district court thought really needed to be expert, because it was opinion about something that they had not observed happen. They hadn't even looked in the whole year before, it seems. They just looked after. So I know you're going to argue about that. He never mentions the lay testimony. He doesn't talk about lay testimony at all. He ignored it. He didn't — there's nothing in that order that talks about the condition of the building, the adjusters' decisions, the opinions of the lay testimony. He just doesn't mention it. The focus of Kim v. Maffrey is exactly on that issue. And that's why we're here, because we think a jury should be able to consider that evidence versus their paid litigation expert and say, make a decision. Why don't we trust the jurors? I'll still give you a few minutes for rebuttal, but let's go to the other side. Thank you. Good morning, Your Honors. Tom Orlando for Defendant Appley Travelers. May it please the Court. The thrust of RPP's argument appears to be that the district court judge invented a new burden. I agree with Judge Pitts that he did not do so. He was applying the existing standards of Rule 56 and the evidentiary rules, and we're here to talk about whether or not the district court judge did that. Judge Friedland, you asked counsel, what is the evidence you have that you think the district court judge should have looked at in RPP's favor? So the only way to go through and figure out whether the district court judge properly did this is to go through the evidence. So we start with travelers. It was our motion, and we supported our motion with an expert who gave an opinion that the wind did not cause this damage. RPP didn't challenge that expert. I think RPP concedes that travelers, if this were to go to trial, Mr. Carey can testify. So travelers met that initial burden on the summary judgment motion. The district court judge, in its order, cited Anderson and Liberty Lobby at length, the U.S. Supreme Court opinion about Rule 56, and it talks about what the opposing party needs to do. The opposing party must – Sorry. Can I just jump to the chase? So opposing counsel argued that the district court didn't talk about the lay testimony, but I think that's wrong, because at ER11 it says neither of these individuals are designated as experts on causation, neither provided any evidence indicating that they would qualify to be so considered in any event. Was that just sua sponte, or had you argued that the lay witnesses were not experts or something like that? The lay witnesses don't answer the question of whether – of what caused this. The lay witnesses don't allow for a reasonable inference, frankly, either way, whether it was wind or deterioration that caused this. Well, I – wait. I thought the lay witnesses – I'd have to look back, but my recollection was that the lay witnesses did say, we think this was caused by the windstorm. It's just you're saying they can't give that opinion. Is that not right? Well, they're lay witnesses, but – well, that's part of the conundrum. They're lay witnesses that RBP says they're offering their precipient – they call observations. What the district court judge correctly held, though, was that they didn't make an observation. They gave an opinion. Right. That's what I'm saying. So the opinion – did you, like, in your summary judgment motion, say, I know these two guys say that it was caused by the wind, but they have no qualification to give that because they're not qualified as experts? Yes. That was the whole – that was – everything in the motion was about these folks can't testify because they weren't disclosed as opinion witnesses to begin with. Mr. Osborne and Mr. Gutierrez were not disclosed, and the district court judge agreed and barred their testimony on the procedural ground, and in addition, that the testimony wasn't reliable. Yeah. So I just – I can't – I'll ask in rebuttal, but I don't understand why, if this somehow was a surprise, they didn't seek an extension or more time to have their expert respond or something. That's a real problem. And on that point, I believe that the expert – initial expert disclosures were due at the same time, and so Mr. Breze, who was RPP's expert, his – the disclosure statement from RPP said that Mr. Breze is going to offer opinions, among many other things, the cause of the loss. It just so happens that his initial opinion didn't address cause at all, and yet RPP knew that this was an issue because they said in their disclosure that he was going to talk about cause of loss. He didn't, and then when our expert did, on rebuttal, then Mr. Breze purportedly addressed cause, but as Judge Pitts notes, it was one sentence in a report without any explanation. I think what the District Court judged this discussion about, do you need an expert, and why is this a case where you need an expert? The circumstances of the loss here do not allow for a reasonable inference as to what caused the loss. There is no dispute that there was a rainstorm on the day in question, and there's no dispute that water got into the building. There's no dispute that there was wind associated with the storm, but there's also no dispute that there were leaks that were repaired within, or a year before and before that, that there was a condition on the roof. We say, Traveler says it's a deteriorated condition, they're called burnouts. There's an issue about were those burnouts caused by the wind, or are they caused by long-term wear and deterioration? The photographs of the patchwork that was done in the day of this loss show that the patchwork was being done in the field of the roof, not at the welds, not at the seams. There are pictures of the post-loss roof that show areas of burnout. So we have evidence of burnout before the loss and after the loss, and Judge Friedland, to your point, a layperson, I certainly can't go up on the roof and look at these burnouts and know, did the wind cause the burnout? Were they pre-existing? Is it deterioration? That's what the district court judge said. This is not a case where a layperson can draw a reasonable inference one way or the other. They need help. And again, don't take my word for it, RPB is proffering Mr. Osborne and Mr. Gutierrez as experts because they repeatedly say in the brief, these guys are roofers and contractors with many, many years of experience. They want to use their expertise to help the jury answer this question about the cause. They may be a layperson, but they have opinions. They're being proffered for their opinions, not their observations. So just so I understand, is that your response to the question I was going to ask you, which is why is it not the case, for example, that the fact that Mr. Osborne inspected the roof after the storm, identified new hole, tears in the roof covering that were not there prior to the storm, and obviously that it was immediately followed by this inundation of water. Is that, it is the background circumstances that there's a need to distinguish causation as to prior deterioration versus the storm that makes this case in ways maybe somewhat unique, whereas if, you know, perhaps if we didn't have that factor, the fact that this event occurred and someone went upstairs, went up to the roof and saw all of these holes, that might be enough percipient testimony to create a genuine dispute of fact as to causation? Your Honor, your recitation of the facts is correct, but for one thing, Mr. Osborne didn't say that the burnouts that he saw after the loss weren't there before. I don't think there's any evidence that he was on the roof before. So what he said, he went up to the roof afterwards, he looked at these burnouts and he observed the burnouts and he says, it looks like wind damage to me. Now that's not admissible. On what basis is it wind damage? He needs to explain why. If he is an experienced contractor that has seen this phenomenon before, has done forensic analysis of roofs, fine. We're not saying he could not be qualified. Courts do qualify roofers and contractors all the time. But I guess would you say if I were a homeowner and I was on my roof hanging Christmas lights the day beforehand and the roof looked great, then we have this wind and rain storm and my kitchen gets destroyed by a water, a roof collapse and there's a hole in the roof, would that be sufficient, maybe it would never be disputed, but if it was disputed, would that be sufficient lay witness, you know, recipient witness testimony to create a dispute effect? I think it would be admissible because you'd have a baseline. I think the issue is a baseline. In your hypothetical, basically you're saying the roof was pristine the day before the loss because I was up there and I observed a pristine roof and now the day after the loss I go up there and I see a lot of things that didn't exist before. That's actually, I think, what happened in Kim V. Mapfrey. Kim V. Mapfrey, I think, is helpful to us because the court there talked about the eyewitness testimony. But the issue there was whether or not everybody, they isolated the pipe that burst, no question about that. The issue was, was the water leaking for more than 14 days? The coverage turned on that issue. The insured left that morning, there was absolutely no indication of any water issue whatsoever returned home that night and the house was flooded. I think that's analogous to your question, your honor. That provided a benchmark and the court there said that's a percipient observation that can come in because it shows a benchmark of what existed before. If this pipe had been leaking for more than 14 days, we would expect the water would have shown itself. So that can come in. And so here, though, we don't have any, there isn't a witness who went up on the roof and made an observation before and after. That doesn't exist. We have two gentlemen who went up on the roof afterwards and just threw out a conclusory statement that what we're seeing here looks like wind, even though what they are seeing is a condition that the record demonstrates existed before the loss and had been repaired in the past in other areas of the roof. Do we know anything about the weather? So we know that the tenant says there was no water coming down until now. Do we know if it rained the week before or two weeks before so that we can say, well, no water came down then? I don't know if the record has that level of detail on the previous weather. I do know that Mr. Carey, traveler's expert, did a meteorological assessment as part of his opinion and determined that the wind speeds at the location were only 23 miles per hour and that, so he went through the methodology of the wind could not have caused any damage to the roof to allow the water to come in. The water was coming in through a preexisting condition. So the weather was addressed. The other thing I would address is finally this issue of, and frankly I don't understand the argument that we're not a stopped, which is good, but somehow we still have this coverage issue that isn't preserved and I'm not, I'm wrestling with how that plays out, but it's not factually based. I mean, the fact of the matter is, and this also distinguishes our case from Kim v. Mapry, in Kim the court said that the insurance adjusters had made a finding, the first two adjusters made a finding that there was coverage because it was sudden and it wasn't more than 14 days. Travelers never made a finding here. Yes, travelers went and said, the first guy said, there's almost $5,000 of water damage and I'm going to write a check. I'm going to make a payment for that. But he didn't say, I find that the storm caused the damage on the roof to let the water come in. We don't have that finding. And instead, travelers investigated coverage all along, issued the reservation of rights letter. The reservation of rights letter maybe never got to them though. I'm very confused about what happened with this letter. It's not in the record whether or not it did get to them, but they've never said it didn't. That's also not in the record. And they have knowledge of the letter because it was used at deposition as, as, as an exhibit. And so before the summary judgment motion, they had knowledge of the letter. The letter is very clear, of course, that there was a coverage issue and we were preserving our rights on that. But even without the letter. Did anything happen? Like you sent it, it came back. You send again, it came back or like, what happened exactly with this letter? I don't know if it came back. I think it was sent to, it was sent hard, regular mail because it had a flash drive and I think it went to the public adjusters PO box or something. So he would have to go and pick it up. It's not clear whether or not he did. Oh, I thought there was a return to sender now. I thought there was. Yeah, I thought the sender by delivery was returned or something. It may be and I'm, then I'm misremembering it, but then the adjuster followed up with an email to say, I can email you the letter and I don't think I got a response to that. But they've never said there's no affidavit from the public adjuster. He didn't testify that he never got the letter. They haven't said they didn't get the letter. But putting the letter aside, travelers then wanted to take an examination under oath and did take an examination under oath and the letter requesting the examination under oath said one of the topics is going to be causation. We want to ask you about the cause of loss. It always was an issue. Can I ask you a question? I mean, it seems like the argument that they're making, as I understand it, is that in some ways there is evidentiary value to not just the underlying conclusions of the adjusters and the others involved in processing the claim, but evidentiary value in the actual decision to extend initial coverage, for example, that that should be accorded some evidentiary value sufficient to satisfy their burden at summary judgment and that a jury could conclude from the fact that there was an initial decision with a reservation of rights but nonetheless a decision to provide $5,000 in coverage, that that has evidentiary value. Is there a reason that is not proper evidence of the underlying factual issues? Yes, and we address that in our brief and it's a very recent case on this, citing older case law. It's the Caribbean case, G-H-A-R-I-B-I-A-N. I think it came out this year or last year. It's cited in our brief at page 41. And that case says, and I think Judge Freeland, you made the point, insurance companies make payments all the time for various reasons. The mere fact of a payment cannot be used as an acceptance or an admission of liability or resolve the substantive coverage issue. If they've made a finding of coverage, which is what happened in Kim, they actually made the finding of coverage, that's a different thing. But to just issue a payment, Mr. Mangle, who was the adjuster, he issued the payment without making that finding. He accepted the representation of Mr. Osborne and Mr. Gutierrez on the day he was out there. He accepted their story that the wind caused the damage. And based on that, he issued this check. But he didn't make the finding.  So I've been a little confused about the eerie issues here, like Judge Pitts is asking about this is just summary judgment, this is just Rule 56, but then you're both citing cases from California about experts and about when a payment counts. So are these questions of what evidence is admissible here California law questions or federal law questions? Well, the substantive law is obviously California law. It's a bad faith action brought under California law. But this is a summary judgment case, and so the procedural issue about what's appropriate to look at on a summary judgment motion and under the rules of evidence, that's all federal. And so why are you citing Garibbean to us? Because I think that goes to the substantive issue of what constitutes coverage and what an insurance company can do with respect to coverage and how it determines what is covered. But the question was what evidence is admissible in federal court under Rule 56 as to a fact dispute about coverage, and so it seems like maybe we should be talking about federal law. Well, the payment was made, and we have not said that's not admissible. The payment was made. The question is what does that mean? It certainly doesn't mean. Is the argument something like that the reasoning here explains why the evidence is not proper evidence and even if it were considered proper evidence, it would be more prejudicial than probative of the underlying fact if we're applying the actual federal rules of evidence that apply here? Well, I would say it's not. It's not probative. It's certainly prejudicial, but it's not probative because of the reservation of rights. Because the payment was accompanied by a letter. Except that they maybe didn't get the letter. I mean, this is a little bit tangled. But even if the letter doesn't come in or even if they didn't get it, which they haven't argued that, Travers still continued the investigation and asked for an examination under oath about coverage and causation. Every step of the way, we were still investigating that. In fact, Mr. Carey, counsel keeps calling him a retained litigation expert. Well, that's not entirely true. He was deputized, if you will. He was retained before the suit was fired. So he was first retained to be part of the investigation as to coverage. It just so happens the suit was filed and then he was disclosed as a retained expert. Have you guys tried to talk to our mediators? I think we had a quick, we had a call. Would there be use of trying to settle this case? My recollection now thinking about it was that we were, when we had that call, we were very far apart and it didn't seem like that that was a possibility. So I haven't talked to my client about that since. If I understand on the causation issue, your opposing counsel's argument is that essentially even without expert testimony on causation, there's enough here to create a genuine dispute of material fact and essentially it was an abuse of discretion for the district court to require expert testimony on causation to survive summary judgment on that issue. I mean, I think that's the best distillation I can make of their argument here and so what is your response to that? Well, the only evidence they have on that are the statements of Mr. Gutierrez and Mr. Osborne who went up on the roof afterwards and they say it looks like wind damage. That's the evidence they have, but that's not admissible without the answer of why. Why is it wind and not deterioration? They haven't explained their observation and that's why the judge didn't abuse his discretion because that's simply not enough. I guess to put a finer point in it, you know, why I think he's arguing even without expert testimony, this is something a jury could find, causation, based on even lay witness observations essentially of the facts and you have your expert, but they have their facts and they don't need an expert on causation and there's, well, I can certainly imagine easier cases in which, you know, maybe a tree falls on a house, you know, you don't really need an expert witness to say the tree caused a hole in the house that let in rain. I think if I understand, the district court was saying in this case, the causation question is not so obvious and the jury would require the assistance of experts on causation and then I understand the argument on the other side is that there is no rule of California law to require an insured to have an expert witness on causation and then the California cases he says are really limited to personal injury cases, not insurance coverage. I guess to me that's drilling down is really should, was it an error to or an abuse of discretion to require expert witnesses on causation or is this just normal summary judgment burden? If you remove all of these individuals, there are no facts from which the jury can make the inference. All we know is that there was a rainstorm with some wind, water intrusion and we know that the roof was nearing the end of its useful life, that the conditions that were observed on the roof, these burnouts existed before and after. And so those facts give us two possible causes. How do you get to a reasonable, how does the layperson, how does the jury pick between wind and deterioration? They don't dispute that the roof had the burnouts or had deterioration, they don't dispute that. So there aren't any facts from which the jury can make that. That's why they have Mr. Osborne and Mr. Gutierrez out there as, I'm going to not use the word expert, as roofers and contractors with experience. They're using their experience as roofers and contractors to help educate the jury about why it's wind and not deterioration. But if they're going to do that, then it has to be reliable and they have to jump through the rule 702 hoop and they didn't do it. Would this be a different case if those two had actually been offered and qualified as expert witnesses on causation and or if the expert witness had actually provided more explanation for their causation conclusion, like either of those two could have created a genuine dispute, a material fact. Yes, and that's what the district courts held. It needed to be disclosed and if disclosed, reliable and there's no way to measure reliability here because they just said, this is what it looks like to me. I'm well over my time. Yeah, I think we need to cut you off. Thank you very much. Let's put three minutes on the clock for rebuttal, please. I will be brief. Can I interrupt you just with one question? Your Honor, it would be beyond me to say no. Even if there was a genuine dispute of material fact that precluded summary judgment as to the issue of whether benefits were due, why isn't in some ways the arguments we're having as to whether there was any entitlement to coverage whatsoever sufficient and certainly the test of the evidence they've now provided by their experts for the supporting their claim that there was no coverage obligation, why didn't they at the very least have a reasonable basis for withholding benefits such that the claim that's before us, which is a claim for breach of the covenant of good faith and fair dealing, fails whether or not you might have pursued a contract claim for coverage? Because they didn't do the investigation in the claim. Because the essence of bad faith in California is a failure to investigate. They covered this claim. And Mr. — I mean, they — so where is that? I mean, didn't — they went out immediately. They started requesting the opportunity to have someone come and review. There was a period of time, a delay, between their request to have the roof inspected and the actual opportunity to inspect it. Obviously, there had been changes performed and remediation performed in that time period. So how is it — how is it that — so the theory is even if they could have justified their withholding of benefits, that somehow they nonetheless did so without an — on an improper reason? Your Honor, they told my client at the first interview that if he asked for a dollar more than the $5,000 they paid him, they were going to accuse him of fraud. They found in the claim that this was a $25,000 and then a $30,000 and then in the litigation a $60,000 claim, they never paid another dollar. They never paid a dollar in business interruption. This is a classic bad faith case. Failure to investigate and failure to pay policy benefits. Counsel told Your Honor — So, and that — so that would have — so just so I understand, that would apply even if they — they did have a reasonable basis for denying coverage. But they never denied coverage, Your Honor. And this is the critical thing that the court got wrong. They never denied coverage. Right. They — they extended coverage while reserving their rights. Your Honor, in 2022, at a deposition, Traveler's Unit Manager answered the question this way. Is the railroad business park claim covered under the Traveler's policy? Answer, yes. It was a covered claim. No one for one second thought this was not a covered claim. The reservation of rights that they issued had to do with cooperation of my client because he didn't want to give a recorded statement. Had nothing to do with — with this issue of wind damage. It just isn't in there. If you read that reservation of rights, if they really wanted to talk about what happened in that roof, they would have said so. They quote the policy language and then they quote the rest of the policy as well. So let me go to the heart of the matter. And I think that, Your Honor, Judge Pitts, you put your finger on it. If we are going to make insureds hire experts the moment they have a loss, because years later a carrier can hire a vendor, a consultant, who they pay handsomely to say this was never a covered loss, we are going to dramatically shift the burdens in California to insureds. These are all risk policies. All an insured has to do is say the damage is here, come look at it. And the insured has — is — is — is required to and always does trust the carrier to do a full, thorough, and fair investigation. I mean, your client brought this lawsuit. In the context of the lawsuit, they offered retained expert testimony. I mean, that — that, as you acknowledge, you sort of offered a summary response to that without providing a fulsome — a fulsome analysis of the basis for your expert's preferred opinion. So I don't — again, we're not talking about a sort of general rule of California law about the burden on the insured. We're talking about the obligations of a party who chose to pursue litigation in federal court and is subject to the federal rules, including Rule 56 and the burden-shifting standard that applies. I don't think so, Your Honor. I think the question that you asked counsel, which you never really answered, was why can't a jury rely on an insurance company's investigation? Why can't a jury, in addition to, I think, the facts relating to the loss — I mean, why doesn't the — the tenant flee for the year earlier if there's all this water I mean, I think the theory is sort of — I can see the argument that allowing the mere fact that coverage has been provisionally provided subject to a reservation of rights, we can talk about that, but that that is in some tension with the policy of precluding settlement offers and efforts to settle from being subject to becoming evidence. It's also, you know, generally — it's of limited probative value. It would actually incentivize insurance companies not to do so, to hold their cards and hold their coverage as long as possible so that they don't end up in a situation where the insurer is saying, well, you know, you gave me that $5,000 at the start to help me fix the immediate problems, and now that's evidence that you're on the hook for $600,000 in coverage. I mean, that would be — you know, that there are some pretty negative disincentives if that can be — come in as evidence of their underlying obligations under the policy. Except all of that is contrary to the contract that they entered into. The contract they entered into says all risk. That means the obligation is 100 percent on them to demonstrate in the claim — Right. But we're talking about the Federal rules of evidence and the probative value under the Federal rules of evidence of this kind of conduct. The question I'm asking is, can a jury, with all the inferences our way and all the findings our way, can a jury look at what occurred here, which is that the carrier came out and said, you're covered, and then the minute they raised the issue of maybe we want a little more money, they said, we're going to hold our fire on that. It seems to me that an insured, a customer, a layperson, you know, a consumer can rely and should be able to rely on what they're doing, just as a jury should. And we're not talking about just a little more money, right? I mean, that ultimately what started as a $5,000 offer, that I think the estimate that was provided by the insured was ultimately upward of $600,000 in coverage? Your Honor, can coverage possibly turn on the law settlement dispute? It can't. If what you're saying, if we lose this case, I will have to advise my clients who come in the door for me at a claim every single time, I'll have to say, hire an expert right now. The minute you have a claim, hire a consultant. Because this carrier, five years from now, when they decide they're going to underpay your claim or accuse you of fraud or engage in acts of malice, they're going to, this is going to turn on coverage. And so you have no choice. It is now your burden, which is 100% contrary to the policy and California law. I really think that there was an opportunity to hire the expert or expand the expert or seek more time when the summary judgment motion was filed, and that a lot of cases wouldn't be like this with the Christmas, with the tree falling and the Christmas lights on the roof. I mean, there are a lot of other cases where you wouldn't need an expert, but once it was clear you did, you just didn't ask for one or more time or, I mean, there's a real procedural lapse that happened. Understood, Your Honor. I think we're over time. Thank you for your time. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, SUNG, Pitts